# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

TERRANCE MOORE,

        Plaintiff,

v.

OFFICER MR. PARSONS, OFFICER MR.
TITUS, OFFICER MR. VARGAS, OFFICER
MR. SANCHEZ, CAPTAIN MR. G.
ROBLES, LT. MR. MELENDEZ, LT. MR.
PRIOR, WARDEN FANEUFF and DEPUTY
WARDEN MOLDEN, sued in both
individual and official capacities,

        Defendants.

3:18-cv-00507 (CSH)

APRIL 19, 2018

## INITIAL REVIEW ORDER

**Haight, Senior District Judge:**

Plaintiff Terrance Moore, an inmate currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, has brought this civil rights action *pro se* against various prison officials of Northern Correctional Institution ("Northern C.I."), the prison where he was previously housed, in Somers, Connecticut. The defendants include Correction Officers Parsons, Titus, Vargas, and Sanchez; Captain Robles; Lieutenants Melendez and Prior; Warden Faneuff; and Deputy Warden Molden. Moore is suing these defendants in their official and individual capacities, and seeks monetary damages from all defendants.

Magistrate Judge Garfinkel granted Moore's motion to proceed *in forma pauperis* on March 29, 2018. *See* Doc. 5. The Court now reviews Moore's Complaint to determine whether his claims

are "frivolous" or may proceed under 28 U.S.C. § 1915A. For the following reasons, the Court dismisses his Complaint in part.

## I. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)-(2). Although highly detailed allegations are not required, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)).[1] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

"[W]hether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663-64. When "well-pleaded factual allegations" are present, "a court should assume their

---

[1] The Second Circuit has consistently adhered to the United States Supreme Court's seminal "plausibility" standard set forth in *Iqbal*. *See, e.g., Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017); *Christine Asia Co. v. Ma*, No. 16-CV-2519, 2017 WL 6003340, at *1 (2d Cir. Dec. 5, 2017); *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401 (2d Cir. 2015); *New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119-20 (2d Cir. 2013).

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

Factual disputes do not factor into a plausibility analysis under *Iqbal* and its progeny.

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). *See also Amaker v. New York State Dept. of Corr. Servs.*, 435 F. App'x 52, 54 (2d Cir. 2011) (same). Accordingly, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (quotation marks omitted). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

With respect to *pro se* litigants, it is well-established that "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)). *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same)*; Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (Where the plaintiff proceeds *pro se*, a court is "obliged to construe his pleadings liberally." (quoting *McEachin v.*

*McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004))); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (in reviewing a *pro se* complaint, the court "must liberally construe [the] pleadings, and must interpret [the] complaint to raise the strongest arguments it suggests").

Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quotation marks and citation omitted). Nor may the Court "invent factual allegations" that the plaintiff has not pleaded. *Id.*

## II. <u>FACTUAL ALLEGATIONS</u>

The allegations in this Part are derived from the Complaint.

In July 2017, Moore was housed at Northern Correctional Institution. Doc. 1 (Complaint), ¶3. On or about July 7, 2017, Moore was scheduled for a "social" telephone call, at Northern's 2 west housing unit. *Id.*, ¶11. Starting at 3:00 p.m. on that date, at the beginning of the second shift, Defendant Parsons began harassing Moore, calling him a "snitch" for complaining to Parson's supervisors about him. *Id.*, ¶12. Parsons also called Moore a "rat" and a "wigger." *Id.* Parsons referenced Moore's scheduled telephone call, saying, "let's see how bad you are then" and that he was going to "fuck [him] up." *Id.* Such threats and harassment represented a continuation of a pattern of behavior which had commenced some time ago. *Id.* Parsons continued to taunt Plaintiff for the next several hours.

At approximately 7:00 p.m., Defendants Parsons and Titus reported to Moore's cell for "what was supposed to be" Plaintiff's scheduled telephone call. *Id.*, ¶14. Parsons approached Moore's cell

door, asked him if he was "ready to get fucked up," and then ordered Moore to place his hands through the slot to be handcuffed. *Id.*, ¶15. Moore complied with Parsons' order without resistance. *Id.* Parsons then applied the handcuffs on Moore's wrists extremely tightly, "squeezing the cuffs [until] about their last clicks," causing Moore extreme pain. *Id.*, ¶16. This was done for the sole purpose of causing Moore harm. *Id.* Moore screamed and pleaded for the restraints to be loosened, but Parsons and Titus ignored his cries, calling him a "bitch." *Id.*, ¶17. When Moore then requested the presence of a supervisor, Parsons called him a "snitch bitch." *Id.*, ¶18. Parsons then summoned for Moore's cell door to be opened and entered the cell. *Id.*, ¶19.

Upon entry into the cell, Parsons ordered Moore to kneel on his bunk so that he could apply leg irons, and Moore complied. *Id.*, ¶21. Again, despite Moore's compliance, Parsons applied the restraints in an extremely tight manner, causing Moore extreme pain. *Id.*, ¶22. Parsons continued the harmful restraint application, while Titus stood by and watched, deliberately failing to intervene. *Id.*, ¶23. Parsons commented that Moore's cell was a "blindspot." *Id.*, ¶24. Moore, "in great fear and pain," turned to look back at Parsons and Titus, but Parsons, using an expletive, immediately ordered Moore not to look at him. *Id.*, ¶25.

As Moore voiced his intentions to complain to the supervisors, Parsons yanked on Moore's leg irons, causing Moore to hit his head on the edge of the bed as he fell to the cell floor. *Id.,* ¶26. While Moore was lying face down on the floor, slightly dazed, distraught and in pain, Parsons kicked and punched him several times. *Id.*, ¶27. Moore screamed for help and pleaded for Parsons to stop hitting him, but the assault continued. *Id.*, ¶28. Fully restrained, Moore attempted to take cover under a stationary mounted desk in his cell. *Id.*, ¶29. He was facing away from Parsons and Titus and was not threatening in any way. *Id.* Nevertheless, Parsons continued to assault him, calling

Moore names.  *Id.*, ¶30.  Parsons dragged Moore across the floor by his legs and leg iron chains, and continued to strike him with his closed fists and knees.  *Id.*, ¶¶31-2.  Titus stood by and watched the assault, without intervening.  *Id.*, ¶32.

Approximately two minutes into the assault, Parsons yelled to Titus that he "could go ahead and call it now," which prompted Titus to falsely radio in a "signal-11," which is a Connecticut Department of Correction code for an unruly inmate.  *Id.*, ¶33.  Shortly thereafter, Lieutenants Melendez and Prior arrived at Moore's cell with several other correction officers.  *Id.*, ¶34.  Moore was struck several times by the responding staff, who ignored his cries for help as he lay on the ground, compliant and not resisting.  *Id.*  Moore's head and face were slammed against the ground several times, and the officers attempted to strike him and grab at his face.  *Id.* ¶36-7.  Melendez and Prior, who had been standing by and watching, then unnecessarily sprayed the compliant Moore with a chemical agent.  *Id.*, ¶39.  As a result of the attack, Moore suffered contusions and lacerations on various parts of his body.  *Id.*, ¶40.

After the assault, Melendez and Prior ordered that Moore be placed on in-cell restraint status for approximately twenty-four hours.  *Id.*, ¶42.  Moore's hands were secured in the front in cuffs, his legs were secured in leg irons, and a tether chain connected the handcuffs to the leg irons.  *Id.*  In addition to suffering extreme pain from the assault, Moore was unable to walk freely, use the toilet, or sleep properly because of the restraints.  *Id.*, ¶43.  The pain from his injuries was aggravated by the use of the restraints. *Id.*

### III.  ANALYSIS

**A.      Claims Against Defendants in their Official Capacities**

To the extent Moore seeks money damages from the defendants in their official capacities, the claims are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159 (1985); *Quern v. Jordan*, 440 U.S. 332, 342 (1979). Although the Complaint states that Moore "seeks damages in defendants' individual capacities only," the caption of the Complaint indicates that Defendants are "sued in both individual and official capacities," and Moore does not seek injunctive relief. Doc. 1, at 1 (sic). "Generally, a suit for recovery of money may not be maintained against the state itself, or against any agency or department of the state, unless the state has waived its sovereign immunity under the Eleventh Amendment." *Auguste v. Dep't of Corr.*, 424 F. Supp. 2d 363, 367 (D. Conn. 2006) (citations omitted). "[T]o the extent that a State official is sued in his official capacity, such a suit is deemed to be a suit against the State, and the official is entitled to invoke the same Eleventh Amendment immunity as that belonging to the State." *DeLoreto v. Ment*, 944 F. Supp. 1023, 1031 (D. Conn. 1996). "However, state officials sued in their individual capacities are not immune from personal liability pursuant to § 1983." *Credle-Brown v. Connecticut*, 502 F. Supp. 2d 292, 299 (D. Conn. 2007) (citing *Hafer v. Melo*, 502 U.S. 21, 31 (1991)), *adhered to on reconsideration*, 246 F.R.D. 408 (D. Conn. 2007) . Accordingly, any claims brought against the defendants in their official capacities in this matter are properly dismissed, as Moore does not seek injunctive relief.

**B.      Claims Against Vargas, Sanchez, Robles, Faneuff, and Molden**

Moore's Complaint fails to allege facts that suggest any personal involvement of defendants Vargas, Sanchez, Robles, Fanueff, or Molden. "It is well settled in this Circuit that personal

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quotation marks and citation omitted); *see also McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) (same).

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Wright*, 21 F.3d at 501).

Here, the Complaint contains no allegations that Defendants Vargas, Sanchez, Robles, Faneuff, or Molden personally participated in the acts that give rise to Plaintiff's claims. Further, to the extent Moore included Defendants Robles, Faneuff or Molden in his Complaint based upon their roles as supervisors, it is well-established that their positions alone are insufficient to allege personal involvement in a constitutional violation. *See Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere linkage in the prison chain of command is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." (citations omitted)); *see also Germano v. Dzurenda*, No. 3:09-CV-1316(SRU), 2011 WL 1214435, at *13 (D. Conn. Mar. 28, 2011) ("Supervisory officials cannot be held liable under section 1983 solely for the acts of their subordinates." (citing *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985))). There are no allegations that these defendants were involved in – or even aware of – the allegedly unconstitutional events that transpired on the date of the incident. Nor are there allegations regarding the existence of a policy or custom under which such practices occurred. Accordingly, as the Complaint does not allege the

personal involvement of Defendants Vargas, Sanchez, Robles, Faneuff, or Molden, any claims against those Defendants will be dismissed.

**C.**     **Eighth Amendment Excessive Force**

Moore claims that the defendants violated his Eighth Amendment protection against cruel and unusual punishment by assaulting him in his cell on July 7, 2017.  "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (quoting *Hudson v. McMillian*, 503 US. 1, 4 (1992)). A plaintiff asserting a claim for a violation of the Eighth Amendment must establish both a subjective and an objective component.  *See Sims v. Artuz*, 230 F.3d 14, 20-21 (2d Cir. 2000). "The subjective element is that the defendant must have had the necessary level of culpability, shown by actions characterized by wantonness.  The objective element is that the injury actually inflicted must be sufficiently serious to warrant Eighth Amendment protection." *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (quotation marks and citations omitted); *see also Wilkins*, 559 U.S. at 40.  Thus, "[i]n  an excessive force claim, the core judicial inquiry is whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Geyer v. Choinski*, 262 F. App'x 318 (2d Cir. 2008) (quotation marks and citation omitted).

Moore claims that Defendants violated his Eighth Amendment protection against cruel and unusual punishment by using excessive force. Moore alleges that he was repeatedly struck, punched, kicked, and dragged by Parsons. He claims that Parsons yanked his restraints, causing him to fall head-first to the floor. He alleges that Parsons intentionally applied Moore's restraints on the smallest setting, causing him pain. Moore also alleges that upon responding to his cell, Defendants Melendez

and Prior sprayed Moore with a chemical agent without justification, and then ordered that he be placed on in-cell restraint status for twenty-four hours, exacerbating his injuries. These allegations state a plausible claim of excessive force against Defendants Parsons, Prior, and Melendez under the Eighth Amendment.

### D.    Failure to Intervene

Moore also asserts a claim against Defendants Titus, Melendez, and Prior for failure to intervene. "A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) (collecting cases); *see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." (collecting cases)). In the prison context, "[a] correction officer who fails to intervene to prevent the use of excessive force against a prisoner is . . . liable for the preventable harm caused by the actions of the other officers where that officer observes that excessive force is being used." *Stephens v. Venettozzi*, No. 13-CV-5779 (RA/DF), 2016 WL 929268, at *11 (S.D.N.Y. Feb. 24, 2016) (quotation marks and citation omitted), *report and recommendation adopted*, No. 13-CV-5779 (RA), 2016 WL 4272376 (S.D.N.Y. Aug. 5, 2016). "Liability attaches on the theory that the officer, by failing to intervene, becomes a tacit collaborator in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quotation marks omitted) (citing *O'Neill*, 839 F.2d at 11-12).

To state a claim for a prison official's failure to intervene, a plaintiff must allege facts showing that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a

reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill*, 839 F.2d at 11-12), *aff'd sub nom.*, *Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012).

Plaintiff alleges that for two minutes, Titus "stood by and deliberately failed to intervene, but rather watched" as Parsons deliberately applied restraints in a harmful manner, yanked Plaintiff's restraints causing him to fall head first to the floor, and "brutally" assaulted the restrained Plaintiff, while calling him derogatory names. Doc. 1, ¶¶23-32. Plaintiff also alleges that once Melendez and Prior arrived, "rather than intervening to protect the plaintiff, they stood by and watched" as he was assaulted. *Id.*, ¶39. If Moore can establish that he was subjected to excessive force, and that Titus, Melendez, or Prior were in a position to witness such conduct, knew or should have known that said conduct was violative of Plaintiff's constitutional rights and could have prevented the harm, and failed to take reasonable steps to intervene, then these Defendants would be liable under 42 U.S.C. § 1983. *See McCoy v. Goord,* 255 F. Supp. 2d 233, 261–62 (S.D.N.Y. 2003). Accordingly, Plaintiff has stated a valid claim for failure to intervene against Titus, Melendez, and Prior.[2]

---

[2] The Court recognizes the apparent contradiction of finding that Plaintiff has plausibly alleged both a claim of excessive force and a claim for failure to intervene against Melendez and Prior. "Where an alleged use of excessive force is a single, indivisible assault, it makes little or no sense to say that the same defendant has both used excessive force and failed to intervene—or, to put it more generally, that a defendant can be held liable for failing to intercede in and prevent an unlawful act in which she herself was the principal." *Walker v. City of New York*, 638 F. App'x 29, 32 (2d Cir. 2016). Here, Moore alleges that Melendez and Prior failed to intervene, and "stood by and watched" as he was assaulted by Parsons, and "responding staff." Doc. 1, ¶¶ 34, 39. The Complaint also alleges that Melendez and Prior then deployed a chemical agent, causing Plaintiff harm. We therefore have encountered a situation where the alleged use of excessive force is *not* "a single, indivisible assault" but rather separate and independent instances of force. In these circumstances, it is possible that a defendant can be held liable for both using excessive force and failing to intervene. In contrast, there are no allegations in the Complaint that

E.    **First Amendment Retaliation**

Moore alleges that Parsons assaulted him in retaliation for Moore's complaints to supervisory officials about Parsons' behavior, in violation of Moore's First Amendment rights.

"Prison officials may not retaliate against inmates for exercising their constitutional rights." *Riddick v. Arnone*, No. 3:11-CV-631(SRU), 2012 WL 2716355, at *6 (D. Conn. July 9, 2012). "To prevail on a First Amendment retaliation claim, an inmate must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quotation marks and citation omitted). The prisoner bears the burden of showing that "the protected conduct was a substantial or motivating factor in the prison officials' disciplinary decision." *Id.* at 225 (quotation marks and citation omitted). "Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient." *Riddick*, 2012 WL 2716355, at *6 (citation omitted).

Moore alleges that Parsons' conduct was motivated by retaliation. Specifically, the Complaint contains allegations that Parsons referred to Moore as a "snitch" because Moore had previously complained to Parsons' supervisors about Parsons' treatment of him. Moore also alleges that upon voicing an intention to "tell[] the lieutenants" and complain, Parsons yanked Moore from the bed by his leg irons and physically attacked him. It is well-settled that "the filing of prison grievances is a constitutionally protected activity[.]" *Davis v. Goord*, 320 F.3d 346, 352–53 (2d Cir. 2003).

Titus used any force against Moore, and therefore, Moore has not alleged a claim of excessive force against Titus.

12

Construing his Complaint liberally, Moore's allegations are sufficient to permit a claim of retaliation to proceed against Parsons. However, the Complaint does not contain any allegations that Titus, Melendez, or Prior retaliated against Moore in any way. Although Melendez and Prior allegedly participated in the assault, there are no facts to suggest that they were motivated by any effort to retaliate against Moore. Therefore, Moore's First Amendment retaliation claim may proceed against Parsons, only.

**F.      Deliberate Indifference to Medical Needs**

Moore alleges that he was denied medical care. Such a claim would fall under the Eighth Amendment's prohibition on cruel and unusual punishment, and requires a showing of deliberate indifference to Plaintiff's serious medical needs. *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998); *see also Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (stating that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment" and that such a claim can arise where the "indifference is manifested by . . . prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed" (quotation marks, citations, and footnotes omitted)).

Here, other than the conclusory allegation that he was "denied medical care," Doc. 1, ¶1, the Complaint does not contain any facts showing the Defendants were deliberately indifferent to Plaintiff's medical needs. There is no allegation that any of the Defendants acted in a way that caused Moore to be denied treatment for any injuries stemming from this incident, nor are there any allegations that any such treatment was prevented, once prescribed. Accordingly, Plaintiff's claim for denial of medical care in contravention of the Eighth Amendment will be dismissed.

G.    **State Law Claims**

In addition to his federal claims, Moore has raised the following state law claims against the defendants: assault, battery, intentional infliction of emotional distress, and negligence. *See* Doc.1, ¶1.

This Court may exercise supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367(a), which provides in pertinent part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

"The concept of supplemental jurisdiction, first codified in 28 U.S.C. § 1367 in 1990, has its origins in the judicial doctrine of pendent jurisdiction, discussed by the United States Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 725–29 (1966)." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (citations omitted). Under *Gibbs*, "a federal court has jurisdiction over an entire action, including state-law claims, whenever the federal-law claims and state law claims in the case 'derive from a common nucleus of operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" 316 F.3d at 305 (citing and quoting *Gibbs*, 383 U.S. at 725). District courts apply the "common nucleus of operative fact" test to determine whether supplemental jurisdiction exists in a given case. *See, e.g., Morris v. Yale Univ. Sch. of Med.*, No. 05-CV-848(JBA), 2006 WL 908155. at *3 (D. Conn. April 4, 2006).

The Second Circuit has stated: "A state law claim forms part of the same controversy if it and the federal claim derive from a common nucleus of operative fact. This is so even if the state law claim is asserted against a party different from the one named in the federal claim." *Briarpatch Ltd.,*

*L.P v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004) (citations and internal quotation marks omitted).

As discussed *supra*, Moore has stated a plausible Eighth Amendment claim for excessive force against Parsons, Melendez, and Prior, a plausible claim for failure to intervene against Titus, Melendez, and Prior, and a claim for retaliation against Parsons. Moore's claims for assault, battery, and intentional infliction of emotional distress arise under the same set of facts as those which give rise to those claims. The Court thus has supplemental jurisdiction over these state law claims. Accordingly, the Court examines the Complaint to determine whether Moore has stated any plausible state claim against the defendants.

1.    *Assault and Battery*

Under Connecticut law, assault is "defined as the intentional causing of imminent apprehension of harmful or offensive contact with another." *Germano v. Dzurenda*, 09-CV-1316(SRU), 2011 WL 1214435, *22 (D. Conn. Mar. 28, 2011) (quotation marks omitted) (quoting *Dewitt v. John Hancock Mutual Life Ins. Co.*, 5 Conn. App. 590, 594 (1985)). "[A]n actor is subject to liability for battery [under Connecticut law] if (a) he acts intending to cause harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Germano*, 2011 WL 1214435, at *22 (quoting *Alteiri v. Colasso*, 168 Conn. 329, 334 n.3 (1975)). Moore has alleged, *inter alia*, that Parsons struck, punched, and kicked him several times while he was restrained in handcuffs and leg irons; that Parsons dragged him by his restraints and caused him to fall to the floor; that Melendez and Prior wrongfully sprayed him with a chemical agent; and that Melendez and Prior ordered Moore to be placed on in-cell restraint status for twenty-four hours,

during which time he suffered greatly. Moore has therefore plausibly alleged claims of assault and battery against Parsons, Melendez, and Prior.

2. *Intentional Infliction of Emotional Distress*

In Connecticut, to assert a claim for intentional infliction of emotional distress, a plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." *Miner v. Town of Cheshire*, 126 F. Supp.2d 184, 194 (D. Conn. 2000) (quoting *Petyan v. Ellis*, 200 Conn. 243, 253 (1986)); *see also DeLaurentis v. New Haven*, 220 Conn. 225, 266-67 (1991). Liability for intentional infliction of emotional distress has been found only where the conduct in question is "so extreme and outrageous that it goes beyond all possible bounds of decency, is regarded as atrocious, is utterly intolerable in a civilized society, and is of a nature that is especially calculated to cause, and does cause, mental distress of a very serious kind." *Miner*, 126 F. Supp.2d at 194.

Here, Moore alleges that without provocation, he was brutally assaulted while restrained, in retaliation for complaining about an officer's prior conduct. He further alleges that another officer stood by and watched, without intervening, and then falsely called in a code so that it would appear that the force used was justified. Moore alleges that his head was slammed against the ground "several times" and that a chemical agent was sprayed at him. At this initial screening stage, the Court will construe the facts liberally to find that Plaintiff has alleged a plausible claim of intentional infliction of emotional distress against the Defendants for the alleged violent conduct and failure to intervene. Accordingly, the case may proceed as to Moore's intentional infliction of emotional

16

distress claim against Parsons, Titus, Melendez, and Prior.

      3.    *Negligence*

Finally, Moore alleges that Defendants were negligent. Under Connecticut law, "state employees may not be held personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319 (2003) (citing Conn. Gen. Stat. § 4-165); *see also Hamilton v. Lajoie*, 660 F. Supp.2d 261, 266 (D. Conn. 2009) (finding that § 4-165(a) bars recovery of a negligence claim against correctional officers). Conn. Gen. Stat § 4-165(a) provides that "[n]o state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." "[W]anton, reckless or malicious conduct requires that the defendant had a state of consciousness with regard to the consequences of one's acts. The conduct must be more than negligence and more than gross negligence." *Staton v. Cassavechia*, No. 3:08-CV-142(JCH), 2011 WL 3040911, at *2 (D. Conn. July 25, 2011) (quotation marks and citations omitted). Here, each of Moore's allegations involve intentional conduct. Accordingly, pursuant to Conn. Gen. Stat. § 4-165(a), Moore's negligence claims against Defendants will be dismissed.

## IV. <u>CONCLUSION AND ORDERS</u>

      (1)    For the reasons stated herein, all claims against Defendants Vargas, Sanchez, Robles, Faneuff, and Molden are hereby DISMISSED.

      (2)    All claims against Defendants Parsons, Titus, Prior and Melendez in their official capacities are hereby DISMISSED.

      (3)    Any Eighth Amendment denial of medical care claim is DISMISSED, pursuant to 28 U.S.C. § 1915A(B)(1).

(4) Any state law negligence claim is DISMISSED, pursuant to 28 U.S.C. § 1915A(B)(1).

(5) This case will proceed on the § 1983 federal claims against Parsons, Melendez, and Prior in their individual capacities for excessive force in violation of the Eighth Amendment; against Titus, Melendez, and Prior in their individual capacities for failure to intervene; and against Parsons in his individual capacity for retaliation in violation of the First Amendment.

(6) Plaintiff's state law claims of assault and battery may proceed against Parsons, Melendez, and Prior. Plaintiff's state law claim of intentional infliction of emotional distress may proceed against Parsons, Titus, Melendez and Prior. Each state law claim is permitted to proceed against the defendant solely in his individual capacity for money damages.

(7) The clerk shall verify the current work addresses for Parsons, Titus, Melendez, and Prior with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint to each Defendant at the confirmed address within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver request on the **thirty-fifth (35) day** after mailing. If any Defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and the Defendant shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(8) Parsons, Titus, Melendez, and Prior shall file their response to the Complaint, either an answer or a motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(9)     Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed within **six months (180 days)** from the date of this order, or **on or before October 16, 2018**. Discovery requests need not be filed with the Court.

(10)     All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order, or **on or before November 15, 2018**.

The foregoing is SO ORDERED.


Signed: New Haven, Connecticut
        April 19, 2018


*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge